UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | | |
|---|---|---|---|
| BRENT TAYLOR, | : | | |
| | : | | |
| Plaintiff, | : | Civil Action No.: | 03-0173 (RMU) |
| | : | | |
| v. | : | Document Nos.: | 27, 29 |
| | : | | |
| MARION BLAKEY, Administrator, | : | | |
| Federal Aviation Administration *et al* | : | | |
| | : | | |
| Defendants. | : | | |

## MEMORANDUM OPINION

### GRANTING THE DEFENDANTS' MOTIONS FOR SUMMARY JUDGMENT

### I. INTRODUCTION

This matter comes before the court on defendant Federal Aviation Administration's ("FAA") motion to dismiss or, in the alternative, for summary judgment, and defendant-intervenor Fairchild Corporation's ("Fairchild") motion for summary judgment. The plaintiff, Brent Taylor, brings suit against the FAA pursuant to the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552, seeking design specifications for the Fairchild F-45 ("the F-45"), an antique aircraft. The defendants argue that res judicata bars this case because Greg Herrick litigated and lost an identical FOIA request in *Greg Herrick v. Jane Harvey*, 200 F. Supp. 2d 1321 (D. Wyo. 2000), *aff'd*, 298 F.3d 1184 (10th Cir. 2002). The court holds that, because Herrick and Taylor share, among other things, identical interests and a close relationship, Herrick was Taylor's "virtual representative" in *Herrick v. Harvey* so as to prelude the instant case. Accordingly, the court grants summary judgment to the defendants. Furthermore, because this case clearly violates res judicata principles, the court orders the plaintiff to show cause why he and his lawyer should not be required to pay the attorney's fees that the defendants incurred in this litigation.

## II. BACKGROUND[1]

The plaintiff is a mechanic who restores vintage aircraft. Def.-Intervenor Fairchild's Statement of Material Facts ("Fairchild's Statement") ¶ 1. He is also the president of the Antique Airplane Association, which is dedicated to the preservation of vintage aircraft and aviation heritage. Compl. ¶ 2. In August 2002, the plaintiff wrote to the FAA requesting information (including plans, blueprints, specifications, engineering drawings and other data) concerning a 1935 F-45 aircraft manufactured by the Fairchild Engine and Airplane Corporation ("FEAC"), a predecessor entity of Fairchild. Fairchild's Statement ¶ 9.[2] FEAC produced about twelve F-45 aircraft and only two survive. Pl.'s Mot. for Disc. at 1, 4. In November 2002, after receiving no response to his August letter, the plaintiff appealed the government's non-response. Fairchild's Statement ¶ 10. On February 2003, still without the information he sought, the plaintiff filed the instant complaint.[3]

In 1997, well before this case, Greg Herrick – an owner of the F-45 and a "close

---

[1] The plaintiff did not submit a statement of disputed material facts in his opposition to the defendants' motions. There is no question, however, that the plaintiff (who has counsel in this case) is aware of and attempting to oppose summary judgment. *E.g.*, Opp'n at 2 (noting that there are genuine issues of material fact), 3 (noting a "new unresolved issue of fact before the court"), 8 (same). Although the FAA did submit a motion to dismiss, or in the alternative, for summary judgment, Fairchild's motion was only for summary judgment. Thus, at the very least, the plaintiff has failed to respond appropriately to Fairchild's motion. LCvR 7(h) (stating that oppositions to motions for summary judgment "shall be accompanied by a separate concise statement of genuine issues setting forth all material facts as to which it is contended there exists a genuine issues necessary to be litigated"). Furthermore, the plaintiff fails to provide with his opposition any affidavits or other supporting materials. FED. R. CIV. P. 56(e). Because the plaintiff fails to submit a statement of disputed facts, "the court may assume the facts identified by the moving party in its statement of material facts are admitted." LCvR 7(h). Accordingly, the court will freely cite to Fairchild's statement of material facts.

[2] The FAA possesses this information because federal safety regulations required the FEAC to submit certain design specifications and technical drawings for the F-45 to the Civil Aeronautics Agency, the predecessor of the FAA. Fairchild's Statement ¶ 3.

[3] Fairchild Corporation moved to intervene as a defendant in this case and the court granted its motion on November 15, 2004. *Id.*

associate" of the plaintiff – submitted a FOIA request to the FAA for the same information that the plaintiff now seeks. *Id.* ¶¶ 2-4, 9. The FAA denied Herrick's request on the basis that the information was a trade secret and thus exempt from FOIA disclosure. *Id.* ¶ 6. Herrick brought suit in U.S. District Court for the District of Wyoming to challenge the FAA's invocation of the trade-secret exemption. *Id.* ¶ 8; *see also Herrick*, 200 F. Supp. 2d at 1322-23 (noting that Herrick "seeks to compel the agency to disclose certain technical drawings and other data provided to the agency by the Fairchild Aircraft Corporation in 1935 in connection with its 'Application for Approved Type Certificate' for an aircraft known as the Fairchild F-45").

In the lower court proceedings of *Herrick v. Harvey*, Herrick represented that he was "interested in the preservation of antique aircraft" and possessed a "1936 F-45 originally built by Fairchild Engine and Airplane Corporation." 200 F. Supp. 2d at 1322-23. The district court granted summary judgment to the FAA, upholding the FAA's application of the trade-secret exemption. *Id.* at 1329. Herrick appealed, arguing that (1) the documents no longer constituted a trade secret because the FAA had not shown that Fairchild owned the documents, (2) the documents lost secret status when Fairchild granted the FAA permission to release the documents to the public in 1955, and (3) Fairchild's new refusal to release the documents did not restore the exempt status of the documents because, again, Fairchild did not own the documents. 298 F.3d at 1190.

The Tenth Circuit affirmed the lower court, holding that Fairchild did in fact own the documents. *Id.* at 1191. Furthermore, the court held that the documents lost secret status when Fairchild granted the FAA permission to release the documents to the public in 1955. *Id.* Significantly, however, the court noted that Herrick "has not challenged the legal conclusion that it might be possible for [Fairchild] to revoke the permission to loan the documents to the public

3

or that such a revocation would restore the secret nature of the documents." *Id.* at 1194 n.10. Thus, the court "decline[d] to overturn the district court's judgment on a point that the plaintiff has failed to challenge on appeal." *Id.*

### III.  ANALYSIS

#### A.  Legal Standard for Summary Judgment

Summary judgment is appropriate when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." FED. R. CIV. P. 56(c); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Diamond v. Atwood*, 43 F.3d 1538, 1540 (D.C. Cir. 1995). To determine which facts are "material," a court must look to the substantive law on which each claim rests. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A "genuine issue" is one whose resolution could establish an element of a claim or defense and, therefore, affect the outcome of the action. *Celotex*, 477 U.S. at 322; *Anderson*, 477 U.S. at 248.

In ruling on a motion for summary judgment, the court must draw all justifiable inferences in the nonmoving party's favor and accept the nonmoving party's evidence as true. *Anderson*, 477 U.S. at 255. A nonmoving party, however, must establish more than "the mere existence of a scintilla of evidence" in support of its position. *Id.* at 252. To prevail on a motion for summary judgment, the moving party must show that the nonmoving party "fail[ed] to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex*, 477 U.S. at 322. By pointing to

the absence of evidence proffered by the nonmoving party, a moving party may succeed on summary judgment. *Id.*

In addition, the nonmoving party may not rely solely on allegations or conclusory statements. *Greene v. Dalton*, 164 F.3d 671, 675 (D.C. Cir. 1999); *Harding v. Gray*, 9 F.3d 150, 154 (D.C. Cir. 1993). Rather, the nonmoving party must present specific facts that would enable a reasonable jury to find in its favor. *Greene*, 164 F.3d at 675. If the evidence "is merely colorable, or is not significantly probative, summary judgment may be granted." *Anderson*, 477 U.S. at 249-50 (internal citations omitted).

### B. The Court Grants Summary Judgment to the Defendants

#### 1. The Doctrine of Res Judicata Bars the Plaintiff's Complaint

The FAA claims that the instant case is "a blatant attempt to circumvent the final judgment of the Tenth Circuit and parade the same arguments before a different federal judge." FAA's Mot. at 2; *see also* Fairchild's Mot. at 1. Specifically, the defendants argue that the court should dismiss the complaint on res judicata grounds because the plaintiff's claim is identical to the claim Greg Herrick raised in federal court in Wyoming and because Herrick is in privity with the plaintiff via the doctrine of virtual representation. FAA's Mot. at 12-13; Fairchild's Mot. at 1-2. The plaintiff responds that he is not in privity with Herrick because he did not participate in Herrick's litigation or in Herrick's FOIA request. Opp'n at 6. The plaintiff states that although he and Herrick are "members of the same antique aircraft association" and "have a common interest in the preservation of antique aircraft," the plaintiff and Herrick actually have different incentives and that the court therefore should not invoke res judicata. *Id.* at 7.

"The doctrine of res judicata prevents repetitious litigation involving the same causes of

action or the same issues." *I.A.M. Nat'l Pension Fund v. Indus. Gear Mfg. Co.*, 723 F.2d 944, 946 (D.C. Cir. 1983). Res judicata has two distinct aspects – claim preclusion and issue preclusion (commonly known as collateral estoppel) – that apply in different circumstances and with different consequences to the litigants. *NextWave Pers. Communications, Inc. v. Fed. Communications Comm'n*, 254 F.3d 130, 143 (D.C. Cir. 2001) (citing *I.A.M. Nat'l Pension Fund v. Indus. Gear Mfg. Co.*, 723 F.2d 944, at 946); *Novak v. World Bank*, 703 F.2d 1305, 1309 (D.C. Cir. 1983). Under claim preclusion, "a final judgment on the merits of an action precludes the parties or their privies from relitigating issues that were or could have been raised in that action." *Drake v. Fed. Aviation Admin.*, 291 F.3d 59, 66 (D.C. Cir. 2002) (quoting *Allen v. McCurry*, 449 U.S. 90, 94 (1980)). Under issue preclusion or collateral estoppel, "once a court has decided an issue of fact or law necessary to its judgment, that decision may preclude relitigation of the issue in a suit on a different cause of action involving a party to the first case." *Yamaha Corp. of Am. v. United States*, 961 F.2d 245, 254 (D.C. Cir. 1992) (quoting *Allen*, 449 U.S. at 94). In short, "claim preclusion forecloses all that which might have been litigated previously," while issue preclusion "prevents the relitigation of any issue that was raised and decided in a prior action." *I.A.M. Nat'l Pension Fund*, 723 F.2d at 949; *Novak*, 703 F.2d at 1309. In this way, res judicata helps "conserve judicial resources, avoid inconsistent results, engender respect for judgments of predictable and certain effect, and [] prevent serial forum-shopping and piecemeal litigation." *Hardison v. Alexander*, 655 F.2d 1281, 1288 (D.C. Cir. 1981); *see also Allen*, 449 U.S. at 94.

    As a preliminary matter, the court notes that FAA proceeds under the rubric of claim preclusion/res judicata whereas Fairchild proceeds under the rubric of issue preclusion/collateral

estoppel.  FAA's Mot. at 10-20; Fairchild's Mot. at 1.[4]  The court proceeds with the claim preclusion/res judicata framework because this case involves identical FOIA requests.  *Wrenn v. Shalala*, 1995 WL 225234, *1 (D.C. Cir. Mar. 8, 1995); *ACLU v. DOJ*, 321 F. Supp. 2d 24, 34 (D.D.C. 2004) (discussing how res judicata can preclude identical FOIA requests provided that a post-judgment event has not given rise to a new claim).

To succeed in demonstrating claim preclusion, the defendant must establish the "existence of (1) an identity of parties in both suits; (2) a judgment rendered by a court of competent jurisdiction; (3) a final judgment on the merits; and (4) an identity of the cause of action in both suits."  *Paley v. Estate of Ogus*, 20 F. Supp. 2d 83, 87 (D.D.C. 1998) (citing authorities).  The defendants argue that they meet each of the above four elements.  FAA's Mot. at 10-20; Fairchild's Mot. at 7-9.  In his opposition, however, the plaintiff only challenges the first and fourth elements.  Opp'n at 3-7.  The court limits its analysis accordingly.

### a. The Plaintiff's and Herrick's Lawsuits are Identical

The FAA argues that "[t]he present claim is the same as the claim that was raised in the prior proceeding [because] the two submitted FOIA requests are the same, seek release of the same records, and the agency asserted exemption 4 in each instance."  FAA's Mot. at 12; *see also* Fairchild Mot. at 1-2, 7.  The plaintiff does not directly challenge these assertions.  Instead, he argues that because the Tenth Circuit declined to address certain issues that Herrick "failed to argue on appeal," this court should proceed to the merits of this case to "answer an unanswered question [regarding the restoration of trade secret status]."  Opp'n at 4-5.

---

[4] The FAA argues in the alternative that the doctrine of issue preclusion would also bar this action.  FAA's Mot. at 12 n.4.  The court need not reach this issue because it holds that claim preclusion bars the action.

7

The plaintiff's interest in having this court resolve an unanswered legal question does not overcome res judicata. Indeed, to put the plaintiff's argument in perspective, the Supreme Court has stated that courts should apply res judicata to a "judgment [that] may have been wrong or rested on a legal principle subsequently overruled in another case." *Federated Dept. Stores, Inc. v. Moitie*, 452 U.S. 394, 398 (1981). If this court should apply res judicata in such circumstances, then surely it should apply the doctrine to *Herrick*, which the plaintiff only faults for not addressing an issue he deems important. Furthermore, as indicated above, the doctrine prevents the relitigation of "issues that were *or could have been dealt with in an earlier litigation*." *Angel v. Bullington*, 330 U.S. 183, 193 (1947) (emphasis added). The Tenth Circuit made it clear in this regard that Herrick simply failed to "challenge[] the legal conclusion that it might be possible for [Fairchild] to revoke the permission to loan the documents to the public or that such a revocation would restore the secret nature of the documents." 298 F.3d at 1194 n.10. Ultimately, therefore, in addition to being non-responsive to the defendants' arguments, the plaintiff's attempt to avoid res judicata on the grounds that this court should address an unanswered question is without merit.

### b. The Plaintiff and Herrick are in Privity

As indicated above, to establish claim preclusion, the defendant must demonstrate "an identity of parties in both suits." *Paley*, 20 F. Supp. 2d at 87. Courts have used the term "privity" to encapsulate the relationship that must exist between the parties. *E.g.*, *Allen v. McCurry*, 449 U.S. 90, 94 (1980). As the D.C. Circuit has explained, "[the term 'privity'] designates a person so identified in interest with a party to former litigation that he represents precisely the same legal right in respect to the subject matter involved." *Jefferson School of*

*Social Science v. Subversive Activities Control Bd.*, 331 F.2d 76, 83 (D.C. Cir. 1963). The court can consider a variety of non-parties to a prior action to be privies of a party to the prior action: "(1) a nonparty who controls the original action; (2) a successor-in-interest to a prior party; and (3) a nonparty whose interests were adequately represented by a party to the original action." *Tyus v. Schoemehl*, 93 F.3d 449, 454 (8th Cir. 1996). This case concerns the third category, preclusion by adequate representation, or "virtual representation."

Virtual representation "should be applied on a case-by-case basis using a fact-specific inquiry." *American Forest Council v. Shea*, 172 F. Supp. 2d 24, 31 (D.D.C. 2001). The court should examine (1) identity of interests between the two parties; (2) a close relationship between the prior and present parties; (3) participation in the prior litigation; (4) apparent acquiescence; (5) whether the present party deliberately maneuvered to avoid the effects of the first action; (6) adequacy of representation viewed in terms of incentive to litigate; and (7) whether the case raises a public law issue or private law issue. *Id.* (summarizing *Tyus*, 93 F.3d at 454-56); *see also Ethnic Employees of Library of Congress v. Boorstin*, 751 F.2d 1405, 1411 n.8 (D.C. Cir. 1985) (stating that, "[i]n general, cases in which courts have based preclusion on virtual representation have involved special factors such as substantial elements of participation in the first litigation, apparent consent to be bound, apparent tactical maneuvering, or close relationships between the parties, such as that between family members") (internal quotations omitted).

The party asserting virtual representation need not establish all of the above elements. *See Tyus*, 93 F.3d at 454-55 (noting that "[d]ue to the equitable and fact-intensive nature of virtual representation, there is no clear test for determining the applicability of the doctrine"). At

9

the very least, however, the doctrine requires closely aligned interests. *Aerojet-General Corp. v. Askew*, 511 F.2d 710, 719 (5th Cir. 1975) (stating that "a person may be bound by a judgment even though not a party if one of the parties to the suit is so closely aligned with his interests as to be his virtual representative"); *cf. Holland v. Apfel*, 23 F. Supp. 2d 21, 26 (D.D.C. 1998) (declining to find virtual representation in light of a "disparity of incentives").

The defendants address each of the seven virtual representation factors. FAA Mot. at 16-20; Fairchild Mot. at 10-13. The plaintiff's opposition, which acknowledges these seven factors, Opp'n at 6, only addresses participation in the prior litigation (the plaintiff denies any participation) and identity of interests (the plaintiff denies identical interests or incentives), *id*. at 7. Nevertheless, because the seven factors constitute a fluid test with imprecise boundaries, and because the case law suggests a broad, case-by-base inquiry, the court will not just focus on identity of interests and the plaintiff's lack of actual participation (a point which the defendants concede, FAA Mot. at 17; Fairchild Mot. at 12-13). *American Forest Council*, 172 F. Supp. 2d 31.

### i. Identity of Interests, Close Relationship, Apparent Acquiescence, and Adequacy of Representation

The defendants argue that the plaintiff and Herrick seek the same relief and/or information and have similar motives because they are working together to restore an F-45 owned by Herrick. FAA Mot. at 16, Fairchild Mot. at 11. The plaintiff concedes that he and Herrick are members of the same antique aircraft association and have a common interest in the preservation of the same antique aircraft. Opp'n at 7. Nevertheless, the plaintiff attempts to distinguish his interests from those of Herrick by claiming that Herrick sought the information "to update his own private airplane" whereas the plaintiff "seeks the information for the public

and in the interest of the preservation of antique aircraft heritage." Opp'n at 7.

A party opposing summary judgment must do so with affidavits or other admissible evidence, FED. R. CIV. P. 56(e), and the plaintiff has failed to do so. Moreover, the plaintiff's subtle distinction between his interests and those of Herrick has another, rather serious problem: the plaintiff previously represented to this court that Herrick "requested Mr. Brent Taylor to assist him with the repair of his aircraft" and that Herrick sought the information in his litigation because Herrick was "in the process of repairing the aircraft as part of a museum collection to preserve a piece of aviation history." Pl's Mot. for Disc. at 4, 7. Thus, the court is left with two individuals who are quite fond of antique aircrafts and the historical preservation thereof, who are members of the same antique aircraft association, who keep apprised of each other's litigation,[5] and who successively used the same lawyer[6] to seek identical information regarding an exceedingly rare aircraft that Herrick happens to own and Taylor has agreed to repair. These facts, coupled with the plaintiff's total failure to present a scintilla of evidence in his favor, firmly establish an identity of interests, a close relationship between the parties, and Taylor's apparent acquiescence in Herrick's litigation. Furthermore, the parties essentially identical interests – not to mention their use of the same lawyer – establishes adequacy of representation, "which is best viewed in terms of incentive to litigate." *Tyus*, 93 F. 3d at 455 (noting that "one party 'adequately represents' the interests of another when the interests of the two parties are very

---

[5] Apparently Herrick has also shared with Taylor certain information that Herrick obtained through discovery in his FOIA litigation. Pl.'s Mot. for Disc. at 2, 3 n.2.

[6] *See Tyus*, 93 F.3d at 457 (noting that the use of the same counsel suggests a close relationship between the parties). Herrick lost his appeal on July 24, 2002. 298 F.3d at 1184. Taylor, who acknowledges that he heard of the results of Herrick's case, made his initial FOIA request a month later, on August 22, 2002. Compl. Ex. A; Opp'n at 6.

closely aligned and the first party had a strong inventive to protect the interests of the second party").

### ii. Public Versus Private Law and Deliberate Maneuvering

Application of the doctrine of virtual representation "is particularly appropriate for public law issues." *Tyus*, 93 F.3d at 456; *see also id.* at 457 (noting that a public law issue arises when the plaintiff alleges a right shared in common with the public). Furthermore,

> in public law cases, the number of plaintiffs with standing is potentially limitless. If parties were allowed to continually raise issues already decided, public law claims would assume immortality. Concerns of judicial economy and cost to defendants, while present in every suit, are particularly important in this context. There is another important consideration: in the public law context, if the plaintiff wins, by definition everyone benefits. Holding preclusion inapplicable in this context would encourage fence-sitting, because nonparties would benefit if the plaintiffs were successful but would not be penalized if the plaintiffs lost.

*Id.* at 456 (internal citations and quotations omitted). The defendants argue that this case raises the same concerns other courts have expressed regarding fence-sitting in the public law context. FAA Mot. at 18-19; Fairchild Mot. at 12. Although the number of antique aircraft enthusiasts or individuals seeking information on the F-45 may not be limitless, the court does agree with the defendants' view that the plaintiff's prosecution of this case is unacceptable. *Tyus*, 93 F.3d at 456. Had Herrick won his case, Taylor no doubt would have benefitted; after all, Taylor has already stated that Herrick shared his discovery materials with Taylor. On the other hand, now that Herrick has lost, Taylor is attempting to try again with the same request in this court. If Taylor loses here – and, indeed, he has – fellow antique aircraft enthusiasts cannot simply file their own FOIA requests for the same information *ad infinitum* until they get the relief they want.

Similarly, Herrick's request for Taylor to assist him with the aircraft and the close alignment of Herrick and Taylor's interests as described above leads the court to conclude that

the instant case is one of deliberate maneuvering to avoid the effects of the Herrick's abortive litigation. The plaintiff has presented nothing to this court to challenge the defendants' assertions that this case smacks of forum shopping and contravention of well-settled principles of res judicata. *Cf. Tyus*, 93 F.3d at 457 (noting the significant costs to the judicial system of tactical maneuvering). As indicated above, the plaintiff's main substantive challenge to the defendants' motions is to cite as a disputed material fact the unresolved *legal* issue that his own lawyer failed to raise on appeal in Herrick's case. That meritless argument has no bearing on res judicata; rather, it simply strengthens the court's belief that the plaintiff seeks to accomplish precisely what the doctrine forbids.

### C. The Court Orders the Plaintiff to Show Cause Why the Court Should Not Award Attorneys's Fees to Both Defendants

As part of its motion for summary judgment, Fairchild moves the court to impose sanctions, "including but not limited to the award of reasonable attorney's fees[.]" Fairchild Mot. at 20. Under Federal Rule of Civil Procedure 11, a motion for sanctions must be filed separately from other motions or requests. FED. R. CIV. P. 11(c)(1)(A); *see also Hadges v. Yonkers Racing Corp.*, 48 F.3d 1320, 1323, 1328 (2d Cir. 1995) (denying a request for sanctions that the movant included in his motion to dismiss). Rather than requiring Fairchild to file a separate motion, however, the court notes that it has the inherent power to consider a Rule 11 sanctions motion *sua sponte* by issuing an order directing the offending party to show case why it has not violated Rule 11(b). FED. R. CIV. P. 11(c)(1)(B); *see McLaughlin v. Brandlee,* 602 F. Supp. 1412 (D.D.C. 1985), *aff'd* 803 F.2d 1197 (D.C. Cir. 1986).

It should be clear to the plaintiff that the court deems his case ill-conceived. *See also McLaughlin*, 803 F.2d at 1205 ("when preclusion doctrine clearly forecloses consideration of the

merits, the groundlessness of the litigation or the bad faith in which it was brought may become especially apparent"). Accordingly, the court will direct the plaintiff to show cause by June 1, 2005, why he and his lawyer should not split the costs incurred by Fairchild *and* the FAA.

## IV.  CONCLUSION

For the foregoing reasons, the court grants the defendants' motions for summary judgment. The court further directs the plaintiff to show cause by June 1, 2005, why he and his lawyer should not split the costs of defendant-intervenor Fairchild and defendant FAA. An order consistent with this Memorandum Opinion is separately and contemporaneously issued this 12th day of May, 2005.

RICARDO M. URBINA
United States District Judge