UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

BRENT TAYLOR,
      Plaintiff,

      v.

J. RANDOLPH BABBITT,
Administrator,
Federal Aviation Administration,

      Defendant,

      and

THE FAIRCHILD CORPORATION,

      Intervenor-
      Defendant.

Civil Action No.: 03-0173 (RMU)

Re Document Nos.: 70, 71

# MEMORANDUM OPINION

### GRANTING THE PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT; DENYING THE DEFENDANT'S MOTION FOR SUMMARY JUDGMENT; DENYING AS MOOT THE PLAINTIFF'S MOTION FOR DISCOVERY

## I. INTRODUCTION

This matter is before the court on the Federal Aviation Administration's ("FAA") motion for summary judgment and the plaintiff's cross-motion for summary judgment or, in the alternative, for discovery. The plaintiff, an aircraft enthusiast, submitted a request to the FAA under the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552, seeking design specifications for a 1930s-era antique aircraft, the Fairchild F-45. The FAA denied the request on the grounds that the requested materials constituted trade secrets and were thus exempt from disclosure under 5 U.S.C. § 552(b)(4) ("Exemption 4").

The plaintiff has moved for summary judgment, asserting that the requested materials are not trade secrets for Exemption 4 purposes because they are neither secret nor commercially valuable. In the alternative, the plaintiff moves for leave to seek discovery regarding whether the intervenor-defendant, The Fairchild Corporation, owns the F-45 materials. The FAA has also moved for summary judgment, arguing that the materials are both secret and commercially valuable, and as such are exempted from FOIA disclosure under Exemption 4. For the reasons discussed below, the court concludes the requested materials do not qualify as trade secrets for Exemption 4 purposes because they are neither secret nor commercially valuable. Accordingly, the court grants the plaintiff's motion for summary judgment, denies the defendant's motion for summary judgment and denies the plaintiff's motion for discovery as moot.

## II. FACTUAL & PROCEDURAL BACKGROUND

### A. The F-45 Type Certificate Application

In 1935, the Fairchild Aircraft Corporation ("FAC") submitted an application to the Civil Aeronautics Authority ("CAA"), the predecessor to the FAA, for a type certificate[1] for a new aircraft model, the F-45 airplane. FAA's Renewed Mot. for Summ. J. ("FAA's Mot.") at 1-2; Pl.'s Mot. for Summ. J. or Disc. ("Pl.'s Mot."), Decl. of Michael Pangia ("Pangia Decl."), Ex. B at 1. Pursuant to CAA regulations, FAC submitted numerous materials along with its type certification application, including "technical blueprints depicting the design, materials, components, dimensions and geometry of the aircraft, engineering analyses and engineering test

---

[1] Type certification is the first stage in a process by which the FAA approves new types of aircraft. *United States v. S.A. Empresa de Viacao Area Rio Grandense (Varig Airlines)*, 467 U.S. 797, 805-07 (1984); *see also* 14 C.F.R. §§ 21 *et seq*. Under FAA regulations, an aircraft manufacturer wishing to produce a new type of aircraft must apply for a type certificate and must submit to the agency the designs, drawings, test reports and computations necessary to show that the aircraft comports with FAA airworthiness requirements. *See* 14 C.F.R. §§ 21.17, 21.21.

reports." FAA's Statement of Material Fact ("FAA's Statement") ¶ 1; *see also* FAA's Mot., Decl. of Vito Pulera ("Pulera Decl.") ¶ 11; FAA's Mot., Aff. of Donald Miller ("Miller Aff.") ¶ 5. The CAA subsequently granted FAC a type certificate for the F-45. *See* Pangia Decl., Ex. B at 7.

In 1939, the Fairchild Aircraft Division of the Fairchild Engine and Airplane Corporation ("FEAC") informed the CAA that it had acquired the assets and business of FAC through a statutory merger, and requested that all type certificates be transferred from FAC to FEAC. Pl.'s Mot., Ex. B. The type certificate for the F-45 aircraft was formally transferred to FEAC in 1942, the year that production of the F-45 ceased. *Id.* In total, less than twenty F-45s were manufactured. *See* Pl.'s 1st Mot. for Disc. at 2.

In 1955, FEAC sent a letter ("the 1955 Letter") to the CAA authorizing the agency to "loan" the F-45 type certification materials to members of the public who wished to make repairs to their aircraft.[2] Pangia Decl., Ex. A. Although the 1955 Letter specified that FEAC was not authorizing individuals to manufacture or sell parts built in accordance with the materials, it did not impose any confidentiality requirements on individuals requesting the materials. *See id.*

---

[2] The 1955 Letter states as follows:

> We now wish to advise in order to avoid undue delay and unnecessary exchange of correspondence, that you are authorized to loan data from your files for use in making repairs or replacement parts for aircraft produced by Fairchild without requiring the individual to obtain specific requests from us, provided, of course, that the data being loaned is pertinent to aircraft which are no longer in production.
>
> As we stated in our November 19, 1951 letter, authority to loan such data to owners of Fairchild built airplanes, however, does not permit them to manufacture, sell, or offer for sale (as an approved Fairchild sales outlet) parts built in accordance with these drawings.

Pangia Decl., Ex. A.

3

Despite this authorization, neither the CAA nor the FAA ever disclosed the F-45 type certification materials to members of the public. FAA's Mot. at 2.

## B. Ownership of the F-45 Type Certificate

Beginning in 1961, FEAC underwent a series of name changes, finally settling on Fairchild Industries, Inc. in 1971. FAA's Mot., Decl. of John Jackson ("Jackson Decl.") ¶¶ 16-18. In 1987, Fairchild Industries, Inc. merged with another corporation of the same name, and the surviving entity, also named Fairchild Industries, Inc., held all the assets of the merging corporations. *Id.* ¶ 19. In 1989, Fairchild Industries, Inc. became a subsidiary of Banner Industries, Inc. *Id.* ¶ 20. Because this corporate restructuring did not involve a transfer of corporate assets, Fairchild Industries remained the holder of the F-45 type certificate. *Id.* In 1990, Banner Industries, Inc. changed its name to The Fairchild Corporation ("Fairchild"), the intervenor-defendant in this case. *Id.* ¶ 21. Fairchild Industries, Inc., now a subsidiary of Fairchild, remained the holder of the F-45 type certificate. *Id.* In 1996, all non-telecommunications assets of Fairchild Industries, Inc. (including the F-45 type certificate) were transferred to the Fairchild Holding Corporation, a wholly owned indirect subsidiary of Fairchild. *Id.* ¶ 22. Consequently, the Fairchild Holding Corporation became the holder of the F-45 type certificate. *Id.* The FAA maintains that Fairchild is the present-day corporate successor of the F-45 type certification materials. FAA's Statement ¶ 9.

## C. The *Herrick* Litigation

In 1997, Greg Herrick, the owner of one of the few remaining F-45 airplanes, submitted a FOIA request to the FAA for the F-45 type certification materials for the purpose of restoring his airplane. *Herrick v. Garvey*, 298 F.3d 1184, 1188 (10th Cir. 2002). The FAA informed Herrick that it had contacted Fairchild, which objected to the release of the type certification materials.

4

*Id.* at 1188-89. As a result, the FAA denied Herrick's request, asserting that the materials were exempt from disclosure as trade secrets under FOIA Exemption 4. *Id.*

Herrick filed suit in the United States District Court for the District of Wyoming, asserting that the FAA had improperly applied the trade secrets exemption. *Id.* at 1189. The district court granted summary judgment to the FAA, and the Tenth Circuit affirmed. *Id.* at 1189, 1195. As discussed below, the Tenth Circuit declined to address two matters that had not been challenged on appeal: (1) the district court's determination that Fairchild's revocation of the authority to disclose granted in the 1955 Letter restored the secrecy of the materials for Exemption 4 purposes and (2) the district court's determination that the materials were commercially valuable. *See id.* at 1190 n.3, 1194 n.10.

### D. Procedural History of This Case

In August 2002, the plaintiff submitted his own FOIA request to the FAA, seeking copies of the "plans, blueprints, specifications, engineering drawings and data submitted in support of the Type Certificate for the Fairchild F 45." Compl. ¶ 6; FAA's Statement ¶ 1. The materials requested were identical to those sought by Herrick. *See Herrick v. Garvey*, 200 F. Supp. 2d 1321, 1322 (D. Wyo. 2000) (stating that the plaintiff sought "certain technical drawings and other data provided . . . by the Fairchild Aircraft Corporation in 1935 in connection with its 'Application for Approved Type Certificate' for an aircraft known as the Fairchild F-45"). Indeed, the plaintiff brought his FOIA request after Herrick requested his assistance with repairs to Herrick's F-45. Pl.'s 1st Mot. for Disc. at 8.

In February 2003, after receiving no response from the FAA, the plaintiff filed a complaint in this court. *See generally* Compl. The court stayed the action in April 2003 because of a disagreement as to whether the FAA had actually received the plaintiff's FOIA request.

Order (Apr. 28, 2003). Thereafter, the FAA denied the plaintiff's request and his subsequent appeal. Joint Status Report (Nov. 14, 2003).

In January 2004, the plaintiff filed a motion for leave to conduct discovery. *See generally* Pl.'s 1st Mot. for Disc. The court denied the plaintiff's motion, concluding that discovery was unwarranted as the FAA had not yet filed its motion for summary judgment. *See* Mem. Op. (Aug. 12, 2004) at 4-6.

Fairchild intervened as a defendant in November 2004. *See* Mem. Order (Nov. 15, 2004) at 2-3. In January 2005, Fairchild filed a motion for summary judgment and the FAA filed a motion to dismiss or, in the alternative, for summary judgment, arguing *inter alia* that claim preclusion barred the plaintiff's action. *See generally* Fairchild's Mot. for Summ. J. ("Fairchild's Mot."); FAA's Mot. to Dismiss or for Summ. J. ("FAA's 1st Mot."). More specifically, the defendants argued that under the doctrine of "virtual representation," the plaintiff was in privity with Herrick and that the ruling of the district court in Wyoming barred the plaintiff's claims. Fairchild's Mot. at 7-13; FAA's 1st Mot. at 13-19. The court granted the defendants' motions on claim preclusion grounds, and the Circuit affirmed. *See* Mem. Op. (May 12, 2005) at 5-14; *Taylor v. Blakey*, 490 F.3d 965, 978 (D.C. Cir. 2007). The Supreme Court granted certiorari and vacated the Circuit's ruling on the virtual representation issue. *See Taylor v. Sturgell*, 553 U.S. 880, 904-07 (2008).

Following remand, the plaintiff filed a renewed motion for discovery, which the court again denied on the grounds that discovery was unwarranted in this FOIA action before the government had submitted its motion for summary judgment. *Taylor v. Babbitt*, 673 F. Supp. 2d 20, 23-24 (D.D.C. 2009). Subsequently, the FAA filed a renewed motion for summary judgment, *see generally* FAA's Mot., and the plaintiff filed a motion for summary judgment or,

6

in the alternative, for discovery, *see generally* Pl.'s Mot. With both motions ripe for adjudication, the court turns to the applicable legal standards and the parties' arguments.

### III. ANALYSIS

#### A. Legal Standard for Summary Judgment in a FOIA Case

Summary judgment is appropriate when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." FED. R. CIV. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Diamond v. Atwood*, 43 F.3d 1538, 1540 (D.C. Cir. 1995). In deciding whether there is a genuine issue of material fact, the court is to view the record in the light most favorable to the party opposing the motion, giving the non-movant the benefit of all favorable inferences that can reasonably be drawn from the record and the benefit of any doubt as to the existence of any genuine issue of material fact. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157-59 (1970). To determine which facts are "material," a court must look to the substantive law on which each claim rests. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A "genuine issue" is one whose resolution could establish an element of a claim or defense and, therefore, affect the outcome of the action. *Celotex*, 477 U.S. at 322; *Anderson*, 477 U.S. at 248.

FOIA affords the public access to virtually any federal government record that FOIA itself does not specifically exempt from disclosure. 5 U.S.C. § 552; *Vaughn v. Rosen*, 484 F.2d 820, 823 (D.C. Cir. 1973). FOIA confers jurisdiction on the federal district courts to order the release of improperly withheld or redacted information. 5 U.S.C. § 552(a)(4)(B). In a judicial review of an agency's response to a FOIA request, the defendant agency has the burden of

justifying nondisclosure, and the court must ascertain whether the agency has sustained its burden of demonstrating that the documents requested are exempt from disclosure under FOIA and that the agency has adequately segregated exempt from non-exempt materials. 5 U.S.C. § 552(a)(4)(B); *Al-Fayed v. CIA*, 254 F.3d 300, 305 (D.C. Cir. 2001); *Summers v. Dep't of Justice*, 140 F.3d 1077, 1080 (D.C. Cir. 1998); *Mead Data Cent., Inc. v. Dep't of Air Force*, 566 F.2d 242, 260 (D.C. Cir. 1977). An agency may meet its burden by providing the requester with a *Vaughn* index, adequately describing each withheld document and explaining the reason for the withholding. *Summers*, 140 F.3d at 1080; *King v. Dep't of Justice*, 830 F.2d 210, 224 (D.C. Cir. 1987).

### B. The Court Grants the Plaintiff's Motion for Summary Judgment and Denies the FAA's Motion for Summary Judgment

The FAA contends that the materials requested by the plaintiff constitute trade secrets and are therefore not subject to disclosure pursuant to FOIA Exemption 4.[3] FAA's Mot. at 10-13. The plaintiff counters that the materials are not trade secrets for purposes of FOIA Exemption 4 because they are neither secret nor commercially valuable. Pl.'s Mot. at 6-12.

Exemption 4 of FOIA authorizes the government to withhold "trade secrets and commercial or financial information obtained from a person and privileged or confidential." 5 U.S.C. § 552(b)(4). A trade secret, for purposes of Exemption 4, is "a secret, commercially valuable plan, formula, process, or device that is used for the making, preparing, compounding, or processing of trade commodities and that can be said to be the end product of either innovation or substantial effort." *Pub. Citizen Health Research Grp. v. Food & Drug Admin.*, 704 F.2d 1280, 1288 (D.C. Cir. 1983). Furthermore, there must exist "a direct relationship

---

[3] Although the FAA initially argued that the F-45 type certification materials constituted both trade secrets and confidential commercial information under Exemption 4, *see* FAA's Mot. at 13-17, the FAA has conceded that the materials are not confidential commercial information. FAA's Reply at 1, 2 n.1.

8

between the information at issue and the productive process." *Id.* If information qualifies as a trade secret, it is protected from disclosure under Exemption 4 and the inquiry ends. *Id.* at 1283.

In this case, the parties do not dispute that the F-45 type certification materials were directly related to the productive process of the F-45 aircraft.[4] Rather, the parties' dispute centers on two issues: (1) whether the F-45 type certification materials are, in fact, "secret," and (2) whether these materials are "commercially valuable," as required for trade secret protection under Exemption 4. The court considers these matters in turn.

### 1. The Requested Materials Are Not Secret

The plaintiff contends that the F-45 type certification materials do not fall under Exemption 4 because they are not "secret." *See* Pl.'s Mot. at 6-10. Specifically, the plaintiff asserts that the 1955 Letter from FEAC granting the CAA permission to "loan" the F-45 materials effectively eliminated their secret status. *Id.* at 6-8. The FAA responds that the 1955 Letter did not remove the trade secret status of the materials, as it only authorized the CAA and the FAA to release the materials for certain specified purposes, and in any case, the materials were never actually disclosed to the public. FAA's Mot. at 17-20; FAA's Reply at 2-5. Furthermore, the FAA contends that even if the 1955 Letter removed the materials' secret status,

---

[4] The FAA describes the requested materials as "technical blueprints depicting the design, materials, components, dimensions and geometry of the aircraft, engineering analyses and engineering test reports," which represented "plans, formulae, processes and procedures which were used for the development, quality assurance, and manufacture of the Fairchild F-45 Aircraft." FAA's Statement ¶ 2; *see also* Miller Aff. ¶ 6 (describing the materials as "formulas and calculations, technical and material specifications, manufacturing and assembly processes, production standards, quality control data and engineering data"). The plaintiff does not contest these characterizations. Pl.'s Statement of Material Facts ¶ 2. Indeed, courts have applied Exemption 4 to similar materials involving airplane design. *See, e.g.*, *United Techs. Corp. v. Fed. Aviation Admin.*, 102 F.3d 688, 692 (2d Cir. 1996) (concluding that design drawings of airplane engines were protected under Exemption 4 as confidential commercial information); *Pac. Sky Supply, Inc. v. Dep't of Air Force*, 1987 WL 25456, at *1 (D.D.C. Nov. 20, 1987) (holding that drawings of airplane engine parts were trade secrets under Exemption 4).

9

Fairchild effectively restored the secrecy of the materials by revoking its grant of permission in response to Herrick's FOIA request in 1997. FAA's Reply at 4.

It is well established that the actual public disclosure of trade secrets eliminates the trade secret status of such information. *See, e.g.*, *Ruckelshaus v. Monsanto Co.*, 467 U.S. 986, 1002 (1984) (noting that public disclosure of trade secrets "extinguishe[s]" the owner's property right in the information); *In re Iowa Freedom of Info. Council*, 724 F.2d 658, 662 (8th Cir. 1983) (stating that if trade secrets "are disclosed or revealed, they are destroyed").

In *Herrick*, the Tenth Circuit considered whether the 1955 Letter authorizing the disclosure of the F-45 type certificate materials meant that those materials could not be considered secret for Exemption 4 purposes. *Herrick*, 298 F.3d at 1193-94. Noting that the letter placed no restrictions on the further dissemination of the type certificate materials, the court stated that

> [w]hen a submitter grants the government permission to loan or release specific information to the public, the submitter clearly indicates that he has no further intention to keep the information secret. It is therefore a reasonable inference that the submitter himself would be willing to release the information to the public if requested to do so. Thus, once a submitter grants the government permission to loan or release the information to the public, there is no reason for Exemption 4 to apply because the submitter no longer intends the information to be "secret." An examination of the plain meaning of the word "secret" leads to a similar conclusion. Most people would agree that if a person was given a piece of information and was told that the information could be revealed to anyone who asked about it, the information would not constitute a "secret."

*Id.* (footnote omitted).

Thus, the court concluded, "where the submitter or owner of documents held by the government grants the government permission to loan or release those documents to the public, those documents are no longer 'secret' for purposes of Exemption 4. In such a situation, FOIA creates an obligation for the government to release the documents." *Id.* at 1194.

Like the Tenth Circuit, this court concludes that once FEAC authorized the CAA to disclose the F-45 type certificate materials to outside parties without any obligation to maintain the confidentiality of the information, the materials were no longer secret for purposes of Exemption 4. *Id.* at 1194 & n.8; *see also Ruckelshaus*, 467 U.S. at 1011-12 (observing that "[o]nce the data that constitute a trade secret are disclosed to others, *or others are allowed to use those data*, the holder of the trade secret has lost his property interest in the data") (emphasis added); *Nova Chems., Inc. v. Sekisui Plastics Co.*, 579 F.3d 319, 328 (3d Cir. 2009) (holding that information disclosed pursuant to a licensing agreement that did not require the licensee to maintain its secrecy could not be considered a trade secret).[5]

The FAA contends that even if the 1955 Letter meant that the materials were no longer secret, their secret status was restored when Fairchild revoked its authorization to the FAA's disclosure of the materials. FAA's Reply at 4. The FAA has, however, offered no support for the proposition that materials that have been authorized for public disclosure by their owner are considered secret once more when that authorization is revoked.[6] *See generally* FAA's Mot.; FAA's Reply. Moreover, even if there are circumstances in which secret status can be restored,

---

[5] Although the FAA asserts that only the actual disclosure of information removes its secret status, the authorities it cites either do not support that proposition, *see Nova Chems., Inc. v. Sekisui Plastics Co.*, 579 F.3d 319, 328 (3d Cir. 2009), or are readily distinguishable from the present case, *see Martin Marietta Corp. v. Dalton*, 974 F. Supp. 37, 40 (D.D.C. 1997) (concluding that the limited release of information, without the owner's knowledge or consent, did not render the information public knowledge); *Silverberg v. Dep't of Health & Human Servs.*, 1991 WL 633740, at *3 (D.D.C. June 14, 1991) (observing that the public did not have a right of access to the performance and testing information of a drug testing laboratory merely because the subject of a drug test has the right to access those records).

[6] In *Herrick*, the Tenth Circuit noted that in granting summary judgment to the FAA, the district court "assumed" that where documents have lost their trade secret status because the owner of the information granted permission for the documents to be released, the trade secret status may be restored through the revocation of the grant of permission. *Herrick*, 298 F.3d at 1194 n.10. Because the plaintiff did not raise the issue on appeal, the Tenth Circuit "assumed, without deciding, that it was possible for the grant of permission to be revoked and the secret nature of the documents under FOIA to be restored." *Id.*

they are not present here, where Fairchild's predecessor authorized the public disclosure of the records at issue in 1955, and Fairchild made no effort whatsoever to revoke that authorization until more than forty years later, when Herrick submitted his FOIA request. Pangia Decl. ¶ 4; Pl.'s Mot. at 9-10. Indeed, neither Fairchild nor its predecessors took any steps to maintain the record of its ownership of the type certification materials with the FAA, despite Fairchild's numerous changes in corporate form over the intervening decades. Pangia Decl. ¶¶ 3-4; *see also* 14 C.F.R. § 21.47 (providing that when an entity transfers a type certificate to another entity, it must provide the FAA written notice of the transfer). The court cannot conclude that Fairchild's denial of Herrick's FOIA request, following a forty-year period in which it authorized the disclosure of the materials and took no steps to maintain the secrecy of the information, restores the secret status of the materials at issue.

Accordingly, the court concludes that the F-45 type certificate materials are not secret and therefore do not constitute trade secrets for purposes of Exemption 4. Although this conclusion is sufficient to resolve the parties' cross-motions for summary judgment, the court nonetheless proceeds to consider the second disputed issue – whether the requested materials are commercially valuable – as the resolution of this issue also supports the court's conclusion.

### 2. The F-45 Type Certification Materials Are Not Commercially Valuable

Although it is undisputed that the F-45 type certification materials were commercially valuable when originally submitted in 1935, *see* Pl.'s Mot. at 11; FAA's Mot. at 11, the parties dispute whether the materials remain commercially valuable today. The plaintiff contends that for purposes of Exemption 4, information protected as trade secrets must be commercially valuable because of its use in making a trade commodity. Pl.'s Reply at 9. Thus, the plaintiff asserts that the F-45 materials, which consist of outdated, seventy-year-old technology, are not

commercially valuable because they are not "valuable in manufacturing planes." *Id.*; *see also* Pl.'s Mot. at 11; *id.*, Decl. of George Erdel ("Erdel Decl.") ¶ 6.  The FAA does not contend that the materials are valuable based on their current usefulness in manufacturing aircraft.  FAA's Reply at 8.  Rather, the FAA asserts that the materials are commercially valuable in the antique aircraft market as a result of their "obvious utility in repairing any of the few remaining F-45s." *Id.*

"Very little case law exists which interprets and applies the D.C. Circuit's definition of 'trade secret.'" *Ctr. for Auto Safety v. Nat'l Highway Traffic Safety Admin.*, 93 F. Supp. 2d 1, 14 n.5 (D.D.C. 2000).  Indeed, this Circuit has not had occasion to consider whether trade secret protection may be afforded to information whose value is unrelated to the present-day production of a commodity, nor has it offered a precise definition of the term "commercially valuable."

The Supreme Court has, however, observed that "the value of a trade secret lies in the competitive advantage it gives its owner over competitors." *Ruckelshaus*, 467 U.S. at 1011 n.15. Accordingly, courts have routinely found that information that provides its owner an advantage over its competitors is commercially valuable. *See, e.g.*, *Pac. Sky Supply v. Dep't of Air Force*, 1987 WL 18214, at *3 (D.D.C. Sept. 29, 1987) (concluding that design drawings of airplane parts were commercially valuable because the manufacturer enjoyed substantial commercial success in sales of the airplane parts covered by the drawings during the previous five years and had orders pending for over $150,000 in the parts).  On the other hand, obsolete information that provides no competitive advantage is not commercially valuable and cannot constitute a trade secret. *See, e.g.*, *Fox Sports Net North, LLC v. Minn. Twins P'ship*, 319 F.3d 329, 336 (8th Cir. 2003) (stating that "obsolete information cannot form the basis for a trade secret claim because the information has no economic value"); *MicroStrategy, Inc. v. Business Objects, S.A.*, 661 F.

Supp. 2d 548, 555 (E.D. Va. 2009) (finding that a document was not worthy of trade secret protection because "the products it references have not been on the market for over half a decade, and the market for these products is constantly changing"); *Applied Indus. Materials Corp. v. Brantjes*, 891 F. Supp. 432, 438 (N.D. Ill. 1994) (refusing to extend trade secret protection to information that was "so outdated that it lack[ed] current economic value").

The FAA concedes that the F-45 type certification materials are not commercially valuable based on their usefulness in manufacturing aircraft. FAA's Reply at 8. After all, the technical information in the F-45 type certificate is surely obsolete. *See* Erdel Decl. ¶ 3. Moreover, although Fairchild presently engages in the distribution of aircraft and aircraft components, Fairchild no longer manufactures aircraft. Miller Aff. ¶ 4. Accordingly, the F-45 materials are not commercially valuable vis-à-vis the aircraft manufacturing industry.

Instead, the FAA contends that the commercial value of the F-45 type certification materials arises from their value in the antique aircraft market. FAA's Mot. at 11-12; FAA's Reply at 8. The FAA has produced evidence showing that the design drawings and specifications included in the F-45 type certification materials are valuable in restoring and repairing F-45s and other aircraft of 1930s vintage, as well as in producing replicas. *See* FAA's Reply at 8-9; Pulera Decl. ¶¶ 13-14.

But even if the F-45 type certification materials may be valuable within the antique aircraft market, there is no evidence that these materials are commercially valuable to Fairchild with respect to any business interest it has in the antique airplane market. *See generally* FAA's Mot.; FAA's Reply. Nowhere does the FAA assert that Fairchild currently competes in the antique aircraft market or that it has any intention to do so in the future. *See* FAA's Mot. at 11-

14

12; FAA's Reply at 7-11. Indeed, the FAA cannot even assert that there exists an identifiable market for F-45 plans. FAA's Reply at 8.

While the FAA need not provide detailed information regarding Fairchild's business endeavors within the antique aircraft market, the FAA may not rely merely on broad conclusions that the disclosure of the F-45 plans would negatively impact Fairchild's competitive position in that market. *See Pac. Architects & Eng'rs, Inc. v. Renegotiation Bd.*, 505 F.2d 383, 384 (D.C. Cir. 1974) (stating that agencies may not "thwart[] the intent of the [FOIA] by making 'conclusory and generalized allegations of exemptions'" (quoting *Vaughn v. Rosen*, 484 F.2d 820, 826 (D.C. Cir. 1973)); *see also Nat'l Parks & Conservation Ass'n v. Kleppe*, 547 F.2d 673, 683 (D.C. Cir. 1976) (providing that under the second prong of Exemption 4, a court "need only exercise its judgment in view of the nature of the material sought and *the competitive circumstances in which the [submitters] do business*, relying at least in part on relevant and credible opinion testimony" (emphasis added)).

Because trade secret protection is ultimately grounded in the "economic value . . . [from] the competitive advantage over others that [the owner] enjoys by virtue of its exclusive access to the data," *Ruckelshaus*, 467 U.S. at 1012, the F-45 type certification materials are not commercially valuable because their economic value does not derive from the competitive advantage they confer upon Fairchild within the antique aircraft market. Thus, although the FAA asserts that the F-45 type certification materials are valuable in the antique aircraft market, the FAA has not shown that the F-45 materials confer a competitive advantage upon Fairchild in the antique aircraft market. Consequently, the court concludes that the F-45 type certification materials are not commercially valuable, and thus do not constitute trade secrets under Exemption 4.

In sum, the FAA has not demonstrated that the materials sought by the plaintiff are secret and commercially valuable, as necessary to demonstrate that they are trade secrets protected from disclosure by Exemption 4. The court therefore grants the plaintiff's motion for summary for summary judgment and denies the FAA's motion for summary judgment.[7]

## IV. CONCLUSION

For the foregoing reasons, the court grants the plaintiff's motion for summary judgment, denies the FAA's motion for summary judgment and denies the plaintiff's motion for discovery as moot. An Order consistent with this Memorandum Opinion is separately and contemporaneously issued on this 19th day of January, 2011.

RICARDO M. URBINA
United States District Judge

---

[7] Because the court grants the plaintiff's motion for summary judgment, the court denies the plaintiff's motion for discovery as moot.